# Exhibit A

## FAIRFAX CIRCUIT COURT
## CIVIL CASE COVERSHEET

2017   11089

**Parties:**

| Plaintiffs | Defendants |
|---|---|
| 1. PERATON, INC. (formerly known as Harris IT Services Corporation) | 1. RAYTHEON COMPANY |
| 2. | 2. |
| 3. | 3. |

*Plaintiff proceeding without Counsel – Address and Daytime Phone Number required on Complaint

**Plaintiff Attorney:**

Name: Randall K.Miller     Bar ID: 70672

Firm: Venable LLP

Street: 8010 Towers Crescent Drive, Suite 300

City: Tysons     State: VA     Zip: 22182

Phone Number: (703) 905-1449     Fax Number: (703) 821-8949

E-mail Address: rkmiller@venable.com

**Nature of Complaint** (Check only one)     * Cases in the Civil Tracking Program

| | | |
|---|---|---|
| Administrative Appeal | Defamation * | Malpractice – Medical * |
| Affirmation of Marriage | Delinquent Taxes * | Mechanics/Vendors Lien * |
| Aid & Guidance | Eminent Domain | Partition * |
| Appeal Decision of Board of Zoning | Encumber/Sell Real Estate | Personal Injury – Assault * |
| Appeal of Process/Judicial Appeal | Erroneous Assessments | Personal Injury – Auto * |
| Appointment Church/Organization Trustees | Expungement | Personal Injury – Emotional * |
| Arbitration | False Arrest/Imprisonment* | Personal Injury – Premises Liability* |
| Attachment | Fiduciary/Estate Complaint | Property Damage* |
| Complaint – Equity  * | Garnishment–Federal–180 days | Products Liability* |
| Complaint – Legal Cause of Action * | Garnishment–Wage–180 days | Quiet Title * |
| Compromise Settlement | Garnishment–Other – 90 days | Real Estate * |
| Condemnation* | Guardian/Conservator Adult | Restoration of Driving Privilege |
| Confession of Judgment | Guardianship/Minor | Vital Record Correction |
| Construction  * | ✓ Injunction | Writ Habeas Corpus |
| Contract * | Interpleader | Writ Mandamus |
| Conversion* | Insurance * | Wrongful Death* |
| Court Satisfaction of Judgment | Judicial Review | Wrongful Discharge * |
| Declare Death | Malicious Prosecution * | OTHER: |
| Declaratory Judgment * | Malpractice – Legal * | |

Damages in the amount of $ 25 Million _____ are claimed.

Requested Service: Sheriff☐ Private Process Server☐ DMV ✓ Secretary of Commonwealth☐
State Corporation Commission☐ Publication☐ No Service at this time☐



8010 TOWERS CRESCENT DRIVE   SUITE 300   TYSONS CORNER, VA 22182
**T** 703.760.1600   **F** 703.821.8949   www.Venable.com

Randy K. Miller
(703) 905-1449
rkmiller@venable.com

August 10, 2017

Clerk of the Court
Circuit Court for Fairfax County
4110 Chain Bridge Road
Fairfax, VA 22030

**2017   11089**

Re:   *Peraton, Inc. (formerly known as Harris IT Services Corporation v. Raytheon Company*

Dear Sir/Madam:

I am enclosing for filing the following in the above matter:

1.    Complaint (original and 2 copies);

2.    Motion for Preliminary Injunction (original and 2 copies);

3.    Civil Cover Sheet.

I also enclose our firm check in the amount of $346.00 to cover the costs of filing. Service will be accomplished by Special Process.  Kindly call my assistant, Lynne Rhoades, at (703) 760-1684 when the papers are ready to be served and we will arrange to pick them up for service.

We will be appearing at Calendar Control to obtain a hearing schedule on the Motion for Preliminary Injunction.

Thank you for your assistance in this regard.  Should you have any questions, please do not hesitate to contact me.

Very truly yours,

Randall K. Miller

RKM/lar
Enclosure

Fairfax Circuit Court
Circuit Court
Receipt No. 739307
Receipt Date: 08/10/2017 11:26 AM

Received of:     Venable LLP,                                                                                    $        346.00

Three Hundred Forty Six and 00/100
Peraton Inc  vs.  Raytheon Company

Filer(s): Peraton Inc

| Case | Amount |
|---|---|
| CL-2017-0011089 | |
| Complaint ($500,000.01 and above) | 346.00 |
| Total: | 346.00 |

Balance due court:  $        0.00
Next due date:

Payment Method: Check (Number: 466370)
Amount Tendered:              346.00
Overage:                           0.00
Change Due:                       0.00

John T. Frey, Clerk of Circuit Court

By:     _____
        Deputy Clerk
        Clerk: YLEE00

**V I R G I N I A :**

### CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| **PERATON, INC. (formerly known as Harris IT Services Corporation),** 2235 Monroe Street Herndon, Virginia, 20171 **Plaintiff,** v. **RAYTHEON COMPANY,** SERVE: CT CORPORATION SYSTEM 4701 Cox Road, Suite 285 Glen Allen, VA 23060 **Defendant.** | **Case No.** _____ |

### COMPLAINT

COMES NOW Plaintiff Peraton, Inc., formerly known as Harris IT Services Corporation, (referred to herein as "Harris") and brings this Complaint against Defendant Raytheon Company ("Raytheon"), alleging the following based on personal knowledge and information and belief:

### NATURE OF THE CASE

1.      This case arises out of agreements between Harris and Raytheon in connection with teaming arrangements and non-disclosure agreements to support a U.S. Government Agency (the "Agency") under two different contracts, which the Agency plans to award through competitions among several federal contractor teams. Harris disclosed trade secrets to Raytheon under the protections of the written non-disclosure agreements. Raytheon later elected to pursue the same two contracts independently as a competitor to Harris and pursue teaming opportunities with other competitors of Harris. Acknowledging its duties under the non-disclosure agreements, Raytheon agreed to "firewall" certain Raytheon personnel who had access to Harris's trade

-1-

secrets, meaning precluding such personnel from participating in Raytheon's efforts and on teams that are competitive to Harris for these two contracts. After agreeing to such firewalls in order to protect Harris's trade secrets, Raytheon then abruptly changed course and notified Harris that it would drop the firewalls and allow its employees with access to Harris's trade secrets to work competitively against Harris on the two contracts, in support of Raytheon and/or other third party competitors to Harris. Extensive efforts by Harris to encourage Raytheon to reinstate the firewalls that Raytheon previously determined were needed have failed. Additionally, Raytheon has failed to provide any assurances regarding the scope of its distribution of Harris's trade secrets internally or externally. Making matters worse, Raytheon's outside counsel sent Harris a letter on August 9, 2017 confirming Harris's worst fears that Raytheon would not resume the firewalls and is actually challenging whether Harris's trade secrets deserve any confidentiality protection at all. This letter establishes a resolute conflict between the parties, confirms that Harris's trade secrets are in actual jeopardy, and gives Harris no choice but to sue.

2. Harris brings this action for anticipatory repudiation and breach of nondisclosure agreements, as well as to enjoin threatened misappropriation of Harris's trade secrets under the federal Defendant Trade Secrets Act and the Virginia Uniform Trade Secrets Act.

## PARTIES

3. Harris is a Maryland corporation with its principal place of business at 2235 Monroe Street, Herndon, Virginia, 20171.

4. Raytheon Company is a Delaware corporation with its principal place of business at 16800 E. Centre Tech Parkway, Aurora, Colorado 80011.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under Va. Code § 8.01-328.1 because this cause of

-2-

action arises from Raytheon transacting business in Virginia and causing injury to Harris in Virginia.

6.      Venue in this Court is proper under Va. Code § 8.01-262 because there exists a substantial nexus to this forum as Harris and Raytheon regularly conduct substantial business activity in Fairfax County, Virginia, and Raytheon's acts and omissions giving rise to this action occurred within this County.

7.      Additionally, the non-disclosure agreements at issue dictate that jurisdiction and venue shall lie in the Commonwealth of Virginia, County of Fairfax.

## FACTUAL ALLEGATIONS

8.      Harris and Raytheon are federal government contractors and, occasionally, teaming partners who worked together on developing strategies to compete for specific opportunities to serve the Agency.

9.      The Agency is a U.S. Government agency in charge of designing, building, and deploying national security related products.

10.     The specific opportunities that Harris and Raytheon teamed to compete for are known as the Grimlock and Broadside programs.

11.     Harris and Raytheon entered into a Non-Disclosure Agreement on December 15, 2014 for the Grimlock opportunity that provides for the sharing of trade secrets for specific purposes.

12.     Under the NDA, Raytheon agreed to, among other things:

- Use Harris's proprietary information only for the specific purpose of "facilitate[ing] discussions regarding the Transformers – Grimlock opportunity. These discussions will pertain to strategy, financial, technical, and proposal generation activities." NDA ¶ 4.

- "[M]aintain the information in confidence in accordance with the terms of the Agreement for a period of three (3) years from the date the Agreement expires or otherwise terminates." NDA ¶ 7.

- "[N]ot disclose Proprietary Information to any third party individual, corporation, or other entity . . . [and] shall further limit the circulation and disclosure of the Proprietary Information within its own organization to its employees or agents having a 'need to know' the Proprietary Information for the purpose set forth in this Agreement." NDA ¶ 9.

- "[P]rotect the disclosed Proprietary Information by using the same degree of care, but no less than a reasonable degree of care, that the Receiving Party uses to protect its own Proprietary Information." NDA ¶ 10.

13.     Over time, the parties executed updated versions of this non-disclosure agreement in 2015 and 2017. The updated versions contain the same legal obligations discussed in paragraph 12 of this Complaint.

14.     Likewise, on June 22, 2015, Harris and Raytheon entered into a Non-Disclosure Agreement for the Broadside opportunity that provides for the sharing of trade secrets for specific purposes.

15.     In 2016, the parties entered into an updated version of this agreement. These Non-Disclosure Agreements contain the same legal obligations discussed in paragraph 12 of this Complaint except they relate to the Broadside opportunity.

16.     Harris refers to these various NDAs in this Complaint generally as the "NDAs".

17.     Harris and Raytheon also entered into a Teaming Agreement for Broadside dated October 21, 2014 and a Teaming Agreement for Grimlock dated September 18, 2015. Harris refers to these Teaming Agreements collectively as the "TAs".

18.     The TAs incorporate the terms of the NDAs.

19.     Over the course of the past 2-3 years from the entry of the NDAs and TAs, Harris and Raytheon worked together to develop strategies for bidding on Grimlock and Broadside

-4-

opportunities and winning contract awards for these programs from the Agency.

20.    The work that the companies did together involved Harris disclosing trade secret and proprietary information to Raytheon under the NDAs.

21.    The Harris trade secret and proprietary information consisted of confidential and non-public:

      a.   Strategies, plans and methodologies for:

           i.   structuring specific technical solutions to meet the Agency's requirements;

           ii.   structuring comprehensive offerings, including combinations of technical and management solutions, for the Agency's programs;

           iii.   staffing solutions to meet the Agency's requirements;

           iv.   developing competitive pricing for potential technical and staffing solutions;

           v.   customer contacts and marketing efforts;

           vi.   customer proposal themes and discriminators.

      b.   Technical and competitive assessments and trade-off analyses of:

           i.   customer requirements and priorities;

           ii.   technology and management solutions;

           iii.   internal (self) team strengths and weaknesses;

           iv.   third party competitor strengths and weaknesses.

22.    On April 10, 2017, Raytheon announced that it wished to terminate the TAs and pursue Grimlock and Broadside opportunities with other potential teaming partners.

23.    Harris demanded assurance that if Raytheon proceeded with its stated plan to

work on Grimlock and Broadside opportunities with other teaming partners or otherwise in competition with Harris for these programs, that it preclude those Raytheon employees who had access to Harris's trade secrets from participating in these efforts competitive to Harris.

24.     In competitive government procurements, firewalling employees with knowledge of another company's trade secrets under an NDA is an established practice in the government contract industry in order to prevent misappropriation or misuse of such trade secrets in the competition.

25.     Acknowledging its obligations under the NDAs, Raytheon voluntarily agreed and established firewalls for certain Raytheon employees who had access to Harris trade secrets.

26.     Raytheon sent a formal letter to Harris confirming that Raytheon in fact had established a firewall on May 2, 2017.

27.     Raytheon stated:

> Please note, the Raytheon employees in receipt of or having access to [Harris's] sensitive strategic, financial and technical Proprietary Information *have been firewalled* from supporting another team on parallel Grimlock or Broadside activity. (emphasis added)

28.     Harris accepted, relied upon, and believed Raytheon's representations and assurances that its trade secrets were sufficiently protected.

29.     However, contrary to Raytheon's commitment to the firewalls and its obligations under the NDAs, on May 12, 2017 Raytheon abruptly changed course.

30.     Raytheon notified Harris that it would no longer maintain the firewalls.

31.     Raytheon's notification that it would drop the firewall constitutes an anticipatory repudiation of the NDAs as well as a threatened disclosure of Harris's trade secrets.

32.     Subsequently, Harris vehemently requested that Raytheon re-implement its firewall through subsequent letters and multiple business-focused discussions.

-6-

33.     Harris's attempts to encourage Raytheon to re-implement its firewall were rejected and Raytheon failed to provide any assurances regarding the scope of its disclosure of Harris's trade secrets internally and externally.

34.     In fact, after refusing to comply with Harris's requested deadline for assurance (August 7, 2017), and after Raytheon attempted to extend the discussion of this dispute indefinitely, Raytheon's outside counsel finally wrote a letter confirming Harris's worst fears: not only will Raytheon not resume the firewall, but Raytheon is now questioning whether some of Harris's most important trade secrets are really trades secrets (meaning that Raytheon has no intention to protect them).

35.     This letter exacerbated the urgency and Harris was forced, as a last resort, to immediately file this lawsuit, which it did on the next day after receiving the letter.

36.     Harris's proprietary and trade secret information has market value both commercially and throughout the federal government.

37.     Harris's proprietary and trade secret information is not publically known and has always been maintained in strict confidence.

38.     Harris has taken protective steps to maintain the secrecy of its proprietary and trade secret information, including but not limited to the following:

> a.     Refusing to provide its trade secret information to third parties without an appropriate NDA;
>
> b.     Marking documents containing its trade secret information with a legend stating that the documents are proprietary;
>
> c.     Maintaining password protection for files containing proprietary information;

d.    Maintaining security and secure card access and other security procedures to facilities containing proprietary data;

e.    Ensuring that access to trade secret information is limited to personnel with authorization;

f.    Training all employees about the confidential nature of Harris's trade secrets and importance to maintain security and control over such trade secrets at all times and to guard against unauthorized access;

g.    Segregating information by program and limiting access to information within Harris's systems only to those individuals that are working on a particular program.

39.    In the NDAs, Raytheon agreed that "upon any breach or any threatened breach of this Agreement with respect to the use or disclosure of a Disclosing Party's Proprietary Information, the Disclosing Party may be entitled to seek appropriate equitable relief in addition to remedies it might have at law." NDAs ¶17.

## COUNT I
### (Breach of Contract)

40.    Harris incorporates herein all factual allegations made above.

41.    The NDAs are binding contracts between Harris and Raytheon.

42.    The NDAs require Raytheon to safeguard and not use or disclose Harris's trade secrets.

43.    Raytheon initially indicated that it would comply with the NDAs by firewalling Raytheon employees with access to Harris's trade secrets.

44.    Raytheon's notification that it would drop the firewalls constitutes an anticipatory repudiation and is therefore a breach of the NDAs.

-8-

45.     Raytheon has created an imminent threat of danger and loss of Harris's trade secrets by Raytheon's (a) notification to Harris that it would drop the firewalls; and (b) aggressive contention that it can and will use employees who received Harris's proprietary and trade secret information to pursue Grimlock and Broadside opportunities on contractor teams competing with Harris.

46.     Raytheon's actions described above indicate that it is imminently planning to use or disclose Harris's proprietary information in pursuit of Grimlock or Broadside opportunities on contractor teams competing with Harris in violation of the NDAs.

47.     Harris's proprietary information has significant value.

48.     By reason of the foregoing acts, and as a direct and proximate cause of those acts, Raytheon is liable to Harris in an amount to be determined at trial, but currently estimated to be approximately $25 million.

49.     In addition, Raytheon's breach is causing Harris irreparable harm for which it lacks an adequate remedy at law.

50.     If Raytheon were to use or disclose Harris's proprietary and trade secret information in pursuit of Grimlock or Broadside opportunities with competing contractor teams, Harris's damages would be irreparable and would not be readily ascertainable. Harris is entitled to injunctive relief to avert or minimize this irreparable harm.

### COUNT II
### (Violation of the Virginia Uniform Trade Secret Act)
### (Va. Code § 59.1-336 et seq.)

51.     Harris incorporates herein all factual allegations made above.

52.     Harris made reasonable efforts to protect its trade secrets and maintain the secrecy thereof.

53.     The trade secret and proprietary information at issue is not publically known and has market value both commercially and throughout the federal government.

54.     Harris shared its trade secret information with Raytheon on the express understanding that Raytheon would—and pursuant to NDAs that required Raytheon to—maintain the confidentiality of Harris's trade secrets.

55.     Raytheon was aware that Harris's trade secret information that Raytheon acquired was obtained under circumstances giving rise to a duty to maintain secrecy or limit its use.

56.     Nonetheless, and in breach of its duties to Harris, Raytheon has notified Harris that it is dropping the firewalls it previously established and will permit its employees with knowledge of Harris's trade secrets to team with a Harris competitor on the same opportunities.

57.     By reason of the foregoing acts, and as a direct and proximate cause of those acts, Raytheon has committed a violation of the Virginia Uniform Trade Secrets Act and is liable to Harris in an amount to be determined at trial, but currently estimated to be approximately $25 million.

58.     Unless restrained by the Court, Raytheon's actions will continue to inflict injury and harm on Harris, including irreparable injury for which there is no adequate remedy at law. Harris is entitled to injunctive relief to avert or minimize this irreparable harm.

59.     By the circumstances described above, Raytheon's actions are willful and malicious, entitling Harris to punitive damages under Va. Code § 59.1-338 (B). The Court should "award punitive damages in an amount not exceeding twice any award made under subsection A of this section, or $350,000 whichever is less."

60.     By the circumstances described above, Raytheon's actions were made in bad faith and were willful and malicious, entitling Harris to attorney's fees under Va. Code § 59.1-338.1.

-10-

## COUNT III
### (Violation of the Defend Trade Secrets Act)
### (18 U.S.C. § 1836 et seq.)

61.     Harris incorporates herein all factual allegations made above.

62.     Based on the conduct described above, Raytheon has also violated the federal

Defend Trade Secrets Act ("DTSA").

63.     In 2016, the government enacted the DTSA as an amendment to the Federal

Economic Espionage Act to expand and strengthen protection for trade secrets. 18 U.S.C. §

1831.

64.     Congress recognized that "[t]he growing importance of trade secrets as a form of

intellectual property makes their theft a particularly economically damaging crime" and that

"[p]rotecting trade secrets has become increasingly difficult given ever evolving technological

advancements." S. Rep. No. 114-220, at 1-2 (2016).

65.     The DTSA provides a federal cause of action for threatened and actual

misappropriation of trade secrets "if the trade secret is related to a product or service used in, or

intended for use in, interstate of foreign commerce." 18 U.S.C. § 1836(b)(1).

66.     The statutory language and definitions contained in the DTSA's misappropriation

statute are nearly identical to the Virginia Uniform Trade Secrets Act. For the same reasons that

Raytheon has violated the Virginia Uniform Trade Secrets Act, Raytheon has violated the

DTSA.

67.     Harris's trade secrets are related to products or services used in, or intended for

use in, interstate or foreign commerce.

68.     Under 18 U.S.C. § 1836(b)(3)(B), Harris is entitled to damages for both actual

loss and the unjust enrichment caused by Raytheon's actions that is not taken into account in

computing actual loss. In the alternative, Harris may be entitled to damages measured by the imposition of liability for a reasonable royalty for any unauthorized disclosure or use of Harris's trade secrets.

69.     By reason of the foregoing acts, and as a direct and proximate cause of those acts, Raytheon has committed a violation of the DTSA and is liable to Harris in an amount to be determined at trial, but currently estimated to be approximately $25 million.

70.     Under 18 U.S.C. § 1836(b)(3)(C), Harris is entitled to exemplary damages for Raytheon's willful and malicious actions.

71.     Under 18 U.S.C. § 1836(b)(3)(D), Harris is entitled to recover attorney's fees.

72.     Under 18 U.S.C. § 1836(b)(3)(A), injunctive relief is necessary to prevent actual or threatened misappropriation, which has or will cause injury for which there is no adequate remedy at law.

### COUNT IV
### (Unjust Enrichment)

73.     Harris incorporates herein all factual allegations made above.

74.     By appropriating Harris's trade secret and proprietary information in connection with competition for the Agency and in potentially sharing such information with third parties, Raytheon will be unjustly enriched at the expense of Harris.

75.     Harris conferred a benefit upon Raytheon in the form of its proprietary and trade secret information disclosed under the NDAs, Raytheon knew of this benefit, and Raytheon has accepted and retained this benefit under circumstances that make it inequitable for Raytheon to do so without paying Harris for its value.

76.     By reason of the foregoing unjust enrichment, Raytheon is liable to Harris for the revenues it obtains from the government which are attributable to Raytheon's wrongful use of Harris's trade secret and proprietary information.

77.     By reason of the foregoing unjust enrichment, Raytheon is liable to Harris for the value of the trade secret and proprietary information that it has retained and/or plans to use or disclose.

78.     By reason of the foregoing acts, and as a direct and proximate cause of those acts, Raytheon has been unjustly enriched and is liable to Harris in an amount to be determined at trial, but currently estimated to be approximately $25 million.

## **PRAYER FOR RELIEF**

WHEREFORE, Harris demands judgment in its favor against Raytheon:

A.     Granting it preliminary and permanent injunctive relief;

B.     Granting it compensatory damages;

C.     Granting it punitive or exemplary damages;

D.     Awarding its costs and expenses, including reasonable attorneys' fees (which are recoverable under the Virginia Uniform Trade Secrets Act and the DTSA); and

E.     Granting such other and further relief as the Court deems just and proper.

Dated: August 10, 2017                         Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB 70672)
Nicholas M. DePalma (VSB 72886)
Taylor S. Chapman (VSB 81968)
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com

*Counsel for Plaintiff*

-14-

**VIRGINIA:**

**CIRCUIT COURT FOR FAIRFAX COUNTY**

| | |
|---|---|
| **PERATON, INC. (formerly known as Harris IT Services Corporation),** | |
| **Plaintiff,** | |
| **v.** | **Case No. _____** |
| **RAYTHEON COMPANY,** | |
| **Defendant.** | |

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff Peraton, Inc., formerly known as Harris IT Services Corporation, (referred to herein as "Harris"), by counsel, hereby moves the Court for a preliminary injunction requiring Defendant Raytheon Company ("Raytheon") to 1) be enjoined from utilizing certain personnel, previously identified by Harris that obtained Harris's trade secrets under non-disclosure agreements, in pursuing or working on two federal government contracts and 2) order Raytheon to conduct a comprehensive assessment and search to locate all personnel that obtained, viewed, accessed, or received (orally or via hard copy) Harris's trade secrets and enjoin Raytheon from utilizing all identified personnel in pursuing or working on two federal government contracts. As will be explained in our forthcoming memorandum, such firewalling is necessary to safeguard Harris's trade secrets, to enforce binding non-disclosure agreements between Harris and Raytheon, and to avert irreparable harm to Harris.

Harris requests an evidentiary hearing on this motion.

Harris will seek from Calendar Control: (1) a date for an evidentiary hearing on this motion; and (2) a briefing schedule.

Dated: August 10, 2017

VENABLE LLP

Randall K. Miller, VSB #70672
Nicholas M. DePalma, VSB #72886
Taylor S. Chapman, VSB #81968
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com

*Counsel for Plaintiff Harris IT Services Corporation*

2

CIVIL

Wendy H.
Melissa

# CIRCUIT COURT OF FAIRFAX COUNTY
# CALENDAR CONTROL ORDER

## *PART ONE – TO BE COMPLETED BY THE PARTIES*

Case number(s):   CL-2017-0011089
Plaintiff: Peraton Inc                                v.      Defendant: Raytheon Company
Randall K. Miller                                                Matt Foster
*Counsel for Plaintiff*        □ Pro Se              *Counsel for Defendant*       □ Pro Se
_____ / 70672      _____ / 72130
Signature    ☒ *By telephone*    VSB No.          Signature    ☒ *By telephone*    VSB No.
rkmiller@venable.com /                               fosterm@pepperlaw.com /
(703) 905-1449                                       202-220-1235
Email Address / Telephone Number                     Email Address / Telephone Number

Action requested by: □ Plaintiff □ Defendant _____

Notice of Calendar Control Appearance provided to opposing party on _____ (date)

by _____ (method). *Attach copy of notice if opposing party is not present.*

Action requested: ___Set hearing on preliminary injunction___
___mo for ~~brief~~ briefing schedule.___
_____

Has a substantially similar request previously been made? ☒ No □ Yes, on _____
How did the Court rule on the previous request? _____

## PART TWO – TO BE COMPLETED BY THE CALENDAR CONTROL JUDGE

The action requested is □ DENIED ☒ GRANTED, as follows _____
____Evidentiary hearing set for Thursday ~~a~~____
____For 3 Hours____

□ The hearing presently set for _____ (date) is removed from the docket.

_____       9-28-17        10am         LC1           3 HRS
Existing Date     New Hearing Date   Hearing Time   Judge Assigned     Hearing Length

Jury Trial?            □ No        □ Yes, by request of     □ Plaintiff □ Defendant
□ Two-week motion     □ One-week motion    □ with a judge    □ without a judge
Long briefs approved:   □ No        ☒ Yes, in _____
Is a necessary party incarcerated?    □ No      □ Yes, in _____
Interpreter needed?    □ No        □ Yes _____     (language)
The Scheduling Order deadlines      □ are modified and calculated from the new trial date
□ are NOT MODIFIED by this Order    □ shall be addressed by motion to be heard on _____

Entered: _____8-11-17_____          _____T2_____
                                          Calendar Control Judge

CCR-F-10-Civil        CC   RIB                Revised February 2017

Fairfax Circuit Court
Long Briefing Schedule

Case Name: _Peraton_____ vs. _Raytheon_____

Counsel: Π _Randy Miller____ Δ _Matt Foster___

Case No.: _CL 2017-11089_ Judge Assigned: _CC 1_

Motion(s): _Preliminary Injunction_____

| Activity | Date | Remarks | |
|---|---|---|---|
| Hearing Date | 9-28-17 | *Requires at least 21 days pre-hearing – unless Opening Brief sooner than 7 days* | 10Am<br>Time |
| Opening Brief | 9-4-17 | *Delivered to Chambers and filed with Clerk by 3:00 p.m.* | 10<br>Pages |
| Responsive Brief | 9-18-17 | *7 days after Opening Brief – Delivered to Chambers and filed with Clerk by 3:00 p.m.* | 15<br>Pages |
| Reply Brief (If Permitted) | 9-25-17 | *Last Filing to be received by Judges Chambers Friday before argument by 3:00 p.m.* | 5<br>Pages |

Notes:

Calendar Control Judge _____ Date _8-11-17_



# NINETEENTH JUDICIAL CIRCUIT OF VIRGINIA

Fairfax County Courthouse
4110 Chain Bridge Road
Fairfax, Virginia 22030-4009

703-246-2221 · Fax: 703-246-5496 · TDD: 703-352-4139

COUNTY OF FAIRFAX                    CITY OF FAIRFAX

BRUCE D. WHITE, CHIEF JUDGE
RANDY I. BELLOWS
ROBERT J. SMITH
JAN L. BRODIE
BRETT A. KASSABIAN
MICHAEL F. DEVINE
JOHN M. TRAN
GRACE BURKE CARROLL
DANIEL E. ORTIZ
PENNEY S. AZCARATE
STEPHEN C. SHANNON
THOMAS P. MANN
RICHARD E. GARDINER
DAVID BERNHARD

JUDGES

THOMAS A. FORTKORT
JACK B. STEVENS
J. HOWE BROWN
F. BRUCE BACH
M. LANGHORNE KEITH
ARTHUR B. VIEREGG
KATHLEEN H. MACKAY
ROBERT W. WOOLDRIDGE, JR.
MICHAEL P. McWEENY
GAYLORD L. FINCH, JR.
STANLEY P. KLEIN
LESLIE M. ALDEN
MARCUS D. WILLIAMS
JONATHAN C. THACHER
CHARLES J. MAXFIELD
DENNIS J. SMITH
LORRAINE NORDLUND
DAVID S. SCHELL

RETIRED JUDGES

August 24, 2017

Randall K. Miller, Esquire
Venable, LLP
8010 Towers Crescent Drive, Suite 300
Tysons Corner, Virginia 22182

Matthew D. Foster, Esquire
Pepper Hamilton, LLP
600 14th Street, NW, Suite 600
Washington, DC 20005

RE: *Peraton, Inc. v. Raytheon Company,* CL-2017-11089

Dear Counsel:

Pursuant to your calendar control appearance before Judge Thomas P. Mann, the following is the briefing schedule and procedures which the Court has adopted for the Motion for Preliminary Injunction:

The above referenced case has been set for hearing on Thursday, September 28, 2017 at 10:00 a.m. The hearing will be limited to three (3) hours. Original briefs must be filed with the Clerk of the Court. **Copies of briefs should be delivered in Chambers to Mr. Randolph Critzer, a law clerk for our court.** Please note that this case has not been assigned to any particular Judge. If either counsel intends to rely primarily on any authorities from courts other than the Virginia state appellate courts, copies of any such cases should be appended to the brief.

The time schedule for the filing of briefs is as follows: the opening brief is due by September 4, 2017 and is limited to ten (10) pages, the brief in response is due by September 18, 2017 and is limited to fifteen (15) pages, and the reply brief is due by September 25, 2017 and is limited to five (5) pages.

RE: *Peraton, Inc. v. Raytheon Company*
*Case No.CL-2017-11089*
*August 24, 2017*
*Page 2 of 2*

**If the case or the motion is resolved prior to the hearing date, the parties are instructed to inform the law clerk named above as soon as possible.  If either party needs to request a continuance of this hearing date, the request must be directed to the judge assigned, through his/or law clerk.**

Please contact me upon receipt of this letter if you believe this does not accurately reflect the procedures established at the calendar control hearing.

Sincerely yours,

Randy I. Bellows

RIB/msh
cc:  Mr. Randolph Critzer

**VENABLE**®LLP

8010 TOWERS CRESCENT DRIVE   SUITE 300   TYSONS CORNER, VA 22182
**T** 703.760.1600   **F** 703.821.8949   www.Venable.com

tschapman@venable.com
(703) 905-1409

August 25, 2017

Clerk of the Court
Circuit Court for Fairfax County
4110 Chain Bridge Road
Fairfax, VA 22030

      **Re:**   *Peraton, Inc. v. Raytheon Company*
              **Case No. 2017-11089**

Dear Sir/Madam:

      I am enclosing for filing Plaintiff's Motion for Expedited Discovery in Support of September 28, 2017 Preliminary Injunction Hearing and memorandum in support. Please return a "file stamped" copy to the courier for return to our office.

      Thank you for your assistance.

                            Very truly yours,

                            Taylor S. Chapman

TSC/lar
Enclosure
cc:    Gregg F. LoCascio, Esquire
18668205

VIRGINIA:

## CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| PERATON, INC. (formerly known as Harris IT Services Corporation), | |
| **Plaintiff,** | |
| v. | Case No. 2017-11089 |
| RAYTHEON COMPANY, | |
| **Defendant.** | |

## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
## IN SUPPORT OF SEPTEMBER 28, 2017 PRELIMINARY INJUNCTION HEARING

Plaintiff Peraton, Inc. ("Peraton"), by counsel, hereby moves for an Order, pursuant to Rules 4:8(d) and 4:9(b)(ii) of the Rules of the Virginia Supreme Court, shortening the time for Defendant Raytheon Company ("Raytheon") to respond to nine (9) document requests and eight (8) interrogatories from 21 days to 15 days, such that Raytheon's responses would be due on Friday, September 8, 2017. Peraton also seeks to take a single corporate representative deposition on the same topics identified in the discovery requests on or before September 8, 2017.

As discussed more thoroughly in Peraton's memorandum in support, this discovery is narrowly targeted and necessary because Peraton has moved for a preliminary injunction to prevent Raytheon from misappropriating and disclosing Peraton's trade secrets, Peraton needs the discovery to ascertain the extent of Raytheon's actions to date, and to ensure that the Court's decision will be grounded in a better developed evidentiary record.

1

Peraton intends to go to calendar control and request that this Motion be heard on an expedited schedule.

WHEREFORE, Peraton respectfully requests that the Court grant this Motion and order Raytheon to respond to the Interrogatories and Requests for Production and produce a corporate representative to be deposed by no later than Friday, September 8, 2017.

Dated: August 25, 2017

Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of August, 2017, a copy of the foregoing was sent via first-class mail and electronic mail, postage prepaid, to the following:

Gregg F. LoCascio
Kirkland & Ellis LLP
655 Fifteenth Street, N.W
Washington, D.C. 20005-5793
Telephone: (202) 879-5290
Facsimile: (202) 879-5200
Gregg.locascio@kirkland.com

*Counsel for Defendant Raytheon Company*

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

**VIRGINIA:**

### CIRCUIT COURT FOR FAIRFAX COUNTY

**PERATON, INC. (formerly known as Harris IT Services Corporation),**

      **Plaintiff,**

      **v.**

**RAYTHEON COMPANY,**

      **Defendant.**

**Case No. 2017-11089**

## MEMORANDUM IN SUPPORT OF MOTION FOR EXPEDITED DISCOVERY IN SUPPORT OF SEPTEMBER 28, 2017 PRELIMINARY INJUNCTION HEARING

Plaintiff Peraton, Inc. ("Peraton"), by counsel, hereby submits this Memorandum in support of its motion for an Order, pursuant to Rules 4:8(d) and 4:9(b)(ii) of the Rules of the Virginia Supreme Court, shortening the time for Defendant Raytheon Company ("Raytheon") to respond to nine (9) document requests and eight (8) interrogatories from 21 days to 15 days, such that Raytheon's responses would be due on Friday, September 8, 2017. Peraton also seeks to take a single corporate representative deposition on the same topics identified in the discovery requests on or before September 8, 2017.

This discovery is narrowly targeted and necessary because Peraton has moved for a preliminary injunction to prevent Raytheon from misappropriating and disclosing Peraton's trade secrets, and Peraton needs the discovery to ascertain the extent of Raytheon's actions to date, and to ensure that the Court's decision will be grounded in a better developed evidentiary record.

In support, Peraton respectfully states as follows:

1.     The Complaint in this matter was filed on August 10, 2017.  On the date of filing, Peraton filed a Motion for Preliminary Injunction.

2.      By the time the case was filed, the parties both had engaged counsel and had attempted to voluntarily resolve the dispute through negotiation.

3.      The parties appeared at calendar control on August 11, 2017 and the Court set Peraton's Motion for Preliminary Injunction for a three-hour evidentiary hearing on September 28, 2017, with briefing due as follows: Peraton's Opening Brief – September 4, 2017, Raytheon's Opposition Brief – September 18, 2017, Peraton's Reply Brief – September 25, 2017.

4.      This is a trade secrets case, where Peraton has alleged that Raytheon threatened to misappropriate Peraton's trade secrets and violated non-disclosure agreements.

5.      As explained more fully in the Complaint, Peraton disclosed its trade secrets to Raytheon after entering into teaming agreements and binding non-disclosure agreements related to teaming together to bid on work under two government programs—Broadside and Grimlock. Raytheon terminated the teaming agreements, contends it can compete on the two government programs and utilize the same Raytheon personnel that obtained Peraton's trade secrets, and has refused Peraton's requests to have such personnel firewalled as required by the agreements.

6.      Raytheon could have already begun working with new teaming partners in pursuit of Grimlock and Broadside where it would unlawfully utilize Peraton's trade secrets and potentially disclose such trade secrets to its new teaming partners.  Raytheon's actions now threaten Peraton with irreparable harm.

7.      On August 24, 2017, to ensure that the Court has a developed evidentiary record and allow Peraton to better prepare for the hearing, Peraton served nine document requests and eight interrogatory requests (attached as Exhibits 1 & 2), seeking information detailing Raytheon's receipt, treatment and disclosure of Peraton's trade secrets.

8.      Rules 4:8(d) and 4:9(b)(ii) give the Court authority "to allow a shorter or longer time" for Raytheon to respond to this discovery. *Tackett v. Arlington Cty. Dep't of Human Servs.,* 62 Va. App. 296, 336 (2013) (noting that a court can allow for expedited discovery under 4:9(b)(ii)).

9.      Courts recognize that targeted and limited discovery requests completed sufficiently in advance of a preliminary injunction hearing will allow the parties to present a more fact-based presentation to the Court, and the Court's decision on preliminary injunction in turn will be based on a more sufficiently developed record. *See Physicians Interactive v. Lathian Systems Inc.*, 2003 WL 23018270 (E.D. Va. Dec. 5, 2003) (granting motion for expedited discovery in a case involving a preliminary injunction). Expedited discovery is "particularly appropriate when a plaintiff seeks injunctive relief because of the expedited nature of injunctive proceedings." *Ellsworth Assocs., Inc. v. United States*, 917 F. Supp. 841, 844 (D.D.C. 1996).

10.      In this case, Peraton did not serve broad discovery requests.  Instead, Peraton served limited, targeted requests (8 interrogatories, 9 requests for production, and 1 deposition) that are specifically intended to allow the parties and the Court to better prepare for the preliminary injunction hearing.

11.      The proposed request does not impose an undue burden on Raytheon.  Raytheon is a 25 billion dollar company, one of the largest in the world.  Raytheon's counsel is Kirkland & Ellis, a sophisticated law firm.  The parties have been negotiating this dispute for some time as evidenced by the fact that Raytheon's counsel sent Peraton a very detailed, single-spaced 6-page letter about the dispute before the lawsuit was even filed.

12.      Peraton intends to go to calendar control and request that this Motion be heard on an expedited schedule.

WHEREFORE, Peraton respectfully requests that the Court grant this Motion and order Raytheon to fully respond to the Interrogatories and Requests for Production and produce a corporate representative to be deposed by no later than Friday, September 8, 2017.

Dated: August 25, 2017

Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of August, 2017, a copy of the foregoing was sent via first-class mail and electronic mail, postage prepaid, to the following:

> Gregg F. LoCascio
> Kirkland & Ellis LLP
> 655 Fifteenth Street, N.W
> Washington, D.C. 20005-5793
> Telephone: (202) 879-5290
> Facsimile: (202) 879-5200
> Gregg.locascio@kirkland.com

> *Counsel for Defendant Raytheon Company*

> Randall K. Miller (VSB No. 70672)
> Nicholas M. DePalma (VSB No. 72886)
> Taylor S. Chapman (VSB No. 81968)
> Christian R. Schreiber (VSB No. 89544)
> 8010 Towers Crescent Drive,
> Suite 300
> Tysons Corner, VA 22182
> (703) 905-1449
> (703) 821-8949 (facsimile)
> rkmiller@venable.com
> nmdepalma@venable.com
> tschapman@venable.com
> cschreiber@venable.com

> *Counsel for Plaintiff Peraton, Inc.*

VIRGINIA:

### CIRCUIT COURT FOR FAIRFAX COUNTY

---

PERATON, INC. (formerly known as Harris IT
Services Corporation),

          Plaintiff,

        v.

RAYTHEON COMPANY,

       Defendant.

**Case No. 2017-11089**

---

### PLAINTIFF'S FIRST SET OF
### REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

Plaintiff Peraton, Inc. ("Peraton"), by counsel, and pursuant to Supreme Court of

Virginia Rule 4:9, hereby propounds the following requests for production of documents on

Defendant Raytheon Company ("Raytheon").

### DEFINITIONS

For purposes of responding to this First Set of Requests, the terms listed below
are defined as follows:

1.     "You," "Your," or "Raytheon" refers to Defendant Raytheon Company, including
its parents, subsidiaries, divisions, or affiliates and any corporate predecessor or successor, its
employees, agents, attorneys, consultants, and representatives, including any person who served
in any such capacity at any time.

2.     "Plaintiff" or "Peraton" refers to Plaintiff Peraton, Inc. and its predecessor Harris
IT Services Corporation.

3.     The term "Broadside TA" refers to the agreement HITS-TA-15-0036 dated
October 21, 2014 including all related attachments, modifications, and amendments thereto.

4.     The term "Grimlock TA" refers to the agreement HITS-TA-16-0001 dated
September 18, 2015 including all related attachments, modifications, and amendments thereto.

1



EXHIBIT

1

5.    The term "Broadside NDA" refers to agreement NDA-15-0917 including all related attachments, modifications, revisions, extensions and amendments thereto.

6.    The term "Grimlock NDA" refers to agreement NDA-15-0387 including all related attachments, modifications, revisions, extensions and amendments thereto.

7.    The term "Broadside" refers to the government Transformers - Broadside program that is reference in the Broadside TA.

8.    The term "Grimlock" refers to the government Transformers - Grimlock program that is reference in the Grimlock TA.

9.    The term "person" or "persons" means any natural person, legal entity, or business entity, including, but not limited to, any corporation, partnership, unincorporated association, joint venture, sole proprietorship, government, agency, estate, trust, or any and/or all other organization or group of individuals.

10.    The term "identify," when used in reference to a natural person, includes the full name, present home and business address, present or last known employer, and present business and home telephone numbers of the individual.

11.    The term "identify," when used in reference to an entity other than a natural person, includes that entity's full name, the present or last known address of its principal office, place of business, or place of administration, the type of entity *(e.g.,* corporation, partnership, unincorporated association, etc.), and present business and/or administration telephone number of that entity.

12.    The term "identify," when used in reference to a document (including electronically stored information), includes the name and address of the custodian, the location of the document, and a general description of the document, including: (1) the type of document *(e.g.,* letter or memoranda) and, if electronically stored information, the software application used to create it *(e.g.,* MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; (6) the number of pages in the document or electronically stored information; and (7) the relationship of the author and addressee to each other.

13.    The term "document" or "documents" as used herein shall have the broadest possible meaning ascribed to it by the Rules of the Supreme Court of Virginia and shall in its broadest sense include, without limitation, any and all written, printed, typed, recorded or graphic matter of every type and description, in Your actual or constructive possession, custody or control including, but not limited to, all writings, letters, electronic mail messages, minutes, bulletins, correspondence, telegrams, memoranda, notes, instructions, literature, work assignments, notebooks, records, agreements, contracts, reports, evaluations, notations of

2

telephone or face-to-face conversations or conferences, communications, microfilm, circulars, pamphlets, advertisements, catalogues, studies, notices, summaries, reports, books, invoices, graphs, photographs, drafts, data sheets, data compilations, work sheets, statistics, speeches and other writings, tape recordings, transcripts of tape recordings, computer-stored material, computer data sheets, computer data compilations, data compilations from which information can be obtained or can be translated through detection into reasonably usable form, or any other tangible thing.

14.    The term "communication" means any disclosure, transfer, transmission or exchange of information, thoughts or opinions whether oral, written or by conduct.

15.    A fact, allegation, document, thing, or communication "concerning," "relating to," or "related to" a given subject means all documents and things or communications that directly or indirectly constitute, contain, embody, evidence, show, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, involve, mention, discuss, record, support, negate, or are in any way pertinent to that subject.

16.    A fact, allegation, document, thing, or communication "pertaining to" a given subject means all documents and things or communications that directly or indirectly relate to (as defined herein), refer to, contain, describe, embody, evidence, mention, support, corroborate, demonstrate, prove, show, refute, dispute, rebut, controvert, contradict, constitute, or are in any way pertinent to that subject.

## INSTRUCTIONS

1.    You are to produce entire documents, including attachments, enclosures, cover letters, memoranda, and appendices.

2.    Documents to be produced include documents, wherever located, in Your possession, custody, or control.

3.    If the requested documents are maintained in a file, the file folder is included in the request for production of those documents.

4.    All responsive email communications and attachments thereto must be produced in native format with all metadata intact.

5.    Any document or thing called for under these requests but not produced on the basis of a claim of privilege shall be identified by the name of the preparers, the name of all recipients (including copy recipients), the date of the document, the nature of the document (e.g., memorandum, letter, etc.), and the general nature of the subject matter for which a privilege is claimed. All such documents and/or things shall be listed on a privilege log and the log shall be supplied at a time and place to be agreed upon.

3

6.      Any document bearing any marks which are not a part of the original text, or any reproduction thereof, is to be considered a separate document for purposes of responding to the following document requests. Moreover, if the documents are produced as they are kept in the usual course of business, identical documents maintained in separate files must be produced.

7.      If a requested document is in a language other than English, both the original and any existing English translation thereof should be produced.

8.      Electronic records or computerized information must be produced in an intelligible format or together with a description of the system from which the information was collected sufficient to permit rendering the materials intelligible.

9.      Produce documents as follows:

    a.  Produce all documents as Group IV single page 300 dpi TIF (Tagged Image File) images with an IPRO (LFP) image cross reference file and a Relativity data load file, including beginning and ending of Document plus beginning of attachment and end of attachment for family ranges.   Optical Character Recognition ("OCR") for redacted Documents and/or paper sourced Documents and extracted full text for electronic Documents should be delivered separate from the load file, as separate Document level text files which are named with the same beginning Bates number as appears on the first image of the Document.

    b.  Electronic files should be produced with at least the following items of searchable metadata or information about such records:

      (i)  For emails:

        1.  Author

        2.  Recipient

        3.  CC

        4.  BCC

        5.  Sent Date

      (ii)  For other electronic files:

        1.  Original file name

        2.  File type or extension

4

3. File Path

4. Author

5. Created Date

6. Modified Date

7. Text

(iii) For all Documents (including paper Documents)

1. Custodian

2. Bates Number Beginning

3. Bates Number Ending

4. Family Range Beginning

5. Family Range Ending

c.  Searchable metadata described above should be produced in a Relativity compatible load file format with image cross reference file.  Such load file should indicate the beginning and ending pages of each Document and all images should be named by such Bates numbers.  This load file should also contain an electronic identification of any Documents for which You request special treatment (e.g. confidential records, etc.) per the terms of any applicable agreement or Protective Order.  Data deliveries should be on CD, DVD, eternal Hard Disk Drives or FTP site, as appropriate for the volume of material produced.

d.  In addition to the above, native files should be provided for each electronic Document with file extensions .xls or .ppt being produced.  Native files should be either provided by linking/cross-referencing them to the database which provides the searchable metadata for the records or as separate files that are named by the beginning Bates number of the first image of the Document.

e.  Notwithstanding the foregoing, if any electronically stored information is produced in a form that is not reasonably useable by Aegis, Aegis reserves the right to request that specific and individual documents be delivered in a different form, including native form.

5

      f.   Each page of each Document produced in response to these Requests should contain a unique Bates stamp control number visible on the front of each page and not blocking any text.

10.    If you object to any subpart of a request for information or object to providing certain information requested, state the objection and answer the unobjectionable subpart(s) of the request for information and/or supply the unobjectionable information requested.

11.    If any of the following requests for documents cannot be answered in full after exercising due diligence to secure the requested documents, you shall so state and answer to the extent possible, specifying reasons for any inability to answer the remainder and stating whatever information respondents have concerning the unanswered portions, If any answers are qualified in any particular manner, you shall set forth the details of such qualification.

12.    The use of the word "the" shall not be construed as limiting the scope of any request.

13.    The term "any" or "each" shall be construed to include and encompass "all."

14.    Use of the singular is also to be taken to include the plural, and vice-versa; any use of gender includes both genders; and a verb tense includes all other verb tenses where the clear meaning is not distorted by addition of another tense or tenses.

15.    Words in the masculine, feminine or neuter form shall include each of the other genders.

16.    Unless otherwise specified, the relevant time period for your response to each Interrogatory is January 1, 2014 up to and including the last day of trial in this matter.

17.    All information requested in these interrogatories is limited to unclassified information.

## REQUESTS

1.    All of the "electronic information provided by Harris IT" that Raytheon stated it has segregated in its August 22, 2017 email.

RESPONSE:

2.    All notes, agendas, recordings, memorandum, or summaries of any Grimlock or Broadside meeting that You attended (remotely or in person) with Peraton personnel.

RESPONSE:

3.　　All internal communications relating to Raytheon's obligations or lack of obligations under the Grimlock NDA, Broadside NDA, or to firewall any Raytheon personnel that worked on Grimlock or Broadside.

RESPONSE:

4.　　All documents that You received from Peraton or its predecessor company relating to Grimlock or Broadside.

RESPONSE:

5.　　All non-disclosure agreements or teaming agreements that You have executed with any entity other than Peraton regarding Grimlock or Broadside since January 1, 2017.

RESPONSE:

6.　　All communications (both internal and external) relating to Grimlock or Broadside since January 1, 2017. Include, but do not limit your production to, communications relating to the termination of the Grimlock TA and Broadside TA and the implementation of any firewall related to Grimlock or Broadside.

RESPONSE:

7.　　All communications regarding Raytheon competing for Grimlock or Broadside work as a prime contractor or as a sub-contractor working under any prime contractor that is not Peraton since January 1, 2016. Include, but do not limit your production to, any teaming agreements and non-disclosure agreements.

RESPONSE:

8.　　All exit letters or communications with former employees who worked on Grimlock or Broadside when they left Raytheon or after they left Raytheon.

RESPONSE:

9.　　All Raytheon policies, procedures and other company governance addressing the protection of trade secret and proprietary information, both that of Raytheon and third parties, including those policies and procedures addressing the utilization of firewalls as a method or mechanism to protect information or mitigate conflicts of interest.

RESPONSE:

7

Dated: August 24, 2017

Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of August, 2017, I hand-delivered a copy of the foregoing to:

> Gregg F. LoCascio
> Kirkland & Ellis LLP
> 655 Fifteenth Street, N.W
> Washington, D.C. 20005-5793
> Telephone: (202) 879-5290
> Facsimile: (202) 879-5200
> Gregg.locascio@kirkland.com

*Counsel for Defendant Raytheon Company*

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

18657849

9

VIRGINIA:

### CIRCUIT COURT FOR FAIRFAX COUNTY

PERATON, INC. (formerly known as Harris IT
Services Corporation),

      Plaintiff,

      v.

RAYTHEON COMPANY,

      Defendant.

Case No. 2017-11089

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT

Plaintiff Peraton, Inc. ("Peraton"), by counsel, and pursuant to Rule 4:8 of the Rules of

the Supreme Court of Virginia, propounds the following interrogatories on Defendant Raytheon

Company ("Raytheon").

### DEFINITIONS

For purposes of responding to this First Set of Interrogatories, the terms listed below
are defined as follows:

1.     "You," "Your," or "Raytheon" refers to Defendant Raytheon Company,
including its parents, subsidiaries, divisions, or affiliates and any corporate predecessor or
successor, its employees, agents, attorneys, consultants, and representatives, including any
person who served in any such capacity at any time.

2.     "Plaintiff" or "Peraton" refers to Plaintiff Peraton, Inc. and its predecessor
Harris IT Services Corporation.

3.     The term "Broadside TA" refers to the agreement HITS-TA-15-0036 dated
October 21, 2014 including all related attachments, modifications, and amendments thereto.

4.     The term "Grimlock TA" refers to the agreement HITS-TA-16-0001 dated
September 18, 2015 including all related attachments, modifications, and amendments thereto.

5.     The term "Broadside NDA" refers to agreement NDA-15-0917 including all
related attachments, modifications, revisions, extensions and amendments thereto.

**EXHIBIT**

tabbies®

2

6.      The term "Grimlock NDA" refers to agreement NDA-15-0387 including all related attachments, modifications, revisions, extensions and amendments thereto.

7.      The term "Broadside" refers to the government Transformers - Broadside program that is reference in the Broadside TA.

8.      The term "Grimlock" refers to the government Transformers - Grimlock program that is reference in the Grimlock TA.

9.      The term "person" or "persons" means any natural person, legal entity, or business entity, including, but not limited to, any corporation, partnership, unincorporated association, joint venture, sole proprietorship, government, agency, estate, trust, or any and/or all other organization or group of individuals.

10.     The term "identify," when used in reference to a natural person, includes the full name, present home and business address, present or last known employer, and present business and home telephone numbers of the individual.

11.     The term "identify," when used in reference to an entity other than a natural person, includes that entity's full name, the present or last known address of its principal office, place of business, or place of administration, the type of entity *(e.g.,* corporation, partnership, unincorporated association, etc.), and present business and/or administration telephone number of that entity.

12.     The term "identify," when used in reference to a document (including electronically stored information), includes the name and address of the custodian, the location of the document, and a general description of the document, including: (1) the type of document *(e.g.,* letter or memoranda) and, if electronically stored information, the software application used to create it *(e.g.,* MS Word or MS Excel Spreadsheet); (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; (5) the addressee of the document or electronically stored information; (6) the number of pages in the document or electronically stored information; and (7) the relationship of the author and addressee to each other.

13.     The term "document" or "documents" as used herein shall have the broadest possible meaning ascribed to it by the Rules of the Virginia Supreme Court and shall in its broadest sense include, without limitation, any and all written, printed, typed, recorded or graphic matter of every type and description, in Your actual or constructive possession, custody or control including, but not limited to, all writings, letters, electronic mail messages, minutes, bulletins, correspondence, telegrams, memoranda, notes, instructions, literature, work assignments, notebooks, records, agreements, contracts, reports, evaluations, notations of telephone or face-to-face conversations or conferences, communications, microfilm, circulars, pamphlets, advertisements, catalogues, studies, notices, summaries, reports, books, invoices, graphs, photographs, drafts, data sheets, data compilations, work sheets, statistics, speeches and other writings, tape recordings, transcripts of tape recordings, computer-stored material, computer data sheets, computer data compilations, data compilations from which information

can be obtained or can be translated through detection into reasonably usable form, or any other tangible thing.

14.     The term "communication" means any disclosure, transfer, transmission or exchange of information, thoughts or opinions whether oral, written or by conduct.

15.     A fact, allegation, document, thing, or communication "concerning," "relating to," or "related to" a given subject means all documents and things or communications that directly or indirectly constitute, contain, embody, evidence, show, comprise, reflect, identify, state, refer to, deal with, comment on, respond to, describe, involve, mention, discuss, record, support, negate, or are in any way pertinent to that subject.

16.     A fact, allegation, document, thing, or communication "pertaining to" a given subject means all documents and things or communications that directly or indirectly relate to (as defined herein), refer to, contain, describe, embody, evidence, mention, support, corroborate, demonstrate, prove, show, refute, dispute, rebut, controvert, contradict, constitute, or are in any way pertinent to that subject.

## INSTRUCTIONS

1.     These Interrogatories must be answered by the party to whom they are directed.

2.     The person who makes the answers must sign them, and the attorney who objects must sign any objections.

3.     With respect to the answer to each Interrogatory or subpart thereof, state the source of the information given therein with as much particularity as is reasonably possible, including, without limitation, the nature and designation of any files that contain such information and the identification of each person who provided any information included in such answer. In addition, identify each other person known or believed to have some or all of the information sought in such Interrogatory or subpart thereof.

4.     If you object to fully identifying a document, electronically stored information or oral communication because of a privilege, you must nevertheless provide the following information, unless divulging the information would disclose the privileged information: (1) the nature of the privilege claimed (including work product); (2) if the privilege is being asserted in connection with a claim or defense governed by state law, the state privilege rule being invoked; (3) the date of the document, electronically stored information, or oral communication; (4) a brief description of the type of information *(e.g.,* type of document, electronically stored information, or oral communication); (5) the name, title, and job description of each person who prepared, gave, or received the privileged information; (6) the name, title, and job description of each person who had access to the privileged information; and (7) the general subject matter of the document, electronically stored information, or oral communication.

5.     If you object to any part of an Interrogatory and refuse to answer that part, state Your objection and answer the remaining portion of that Interrogatory. If you object to the scope or time period of an Interrogatory and refuse to answer for that scope or time period, state Your objection and answer the Interrogatory for the scope or time period you believe is appropriate

(including in Your answer a specific statement as to why you believe the scope or time period is inappropriate).

6.      These Interrogatories should be construed to require answers based upon knowledge of, and information available to, the responding party as well as its agents, representatives and, unless privileged, attorneys.

7.      If, in answering these Interrogatories, the responding party encounters any ambiguities when construing a question, instruction, or definition, the responding party's answer shall set forth the matter deemed ambiguous and the construction used in answering.

8.      If any information or document otherwise responsive to these Interrogatories no longer exists or is no longer in Your possession, custody, or control, describe such information or identify such document and indicate what disposition was made of it.

9.      If any of the following Interrogatories cannot be answered in full after exercising due diligence to secure the information, please so state and answer to the extent possible, specifying Your inability to answer the remainder and stating whatever information you have concerning the unanswered portions. If Your answer is qualified in any particular manner, set forth the details of such qualification.

10.      The use of the word "the" shall not be construed as limiting the scope of any request.

11.      The term "any" or "each" shall be construed to include and encompass "all."

12.      Use of the singular is also to be taken to include the plural, and vice-versa; any use of gender includes both genders; and a verb tense includes all other verb tenses where the clear meaning is not distorted by addition of another tense or tenses.

13.      Words in the masculine, feminine or neuter form shall include each of the other genders.

14.      These Interrogatories are continuing in nature and require that you promptly amend or supplement Your answers if you obtain further relevant information.

15.      Unless otherwise specified, the relevant time period for your response to each Interrogatory is January 1, 2013 up to and including the last day of trial in this matter.

16.      All information requested in these interrogatories is limited to unclassified information.

## INTERROGATORIES

1.      Identify all persons that made or contributed to Your decisions to implement the firewall discussed in Your May 2, 2017 letter and to remove that firewall as discussed in Your May 12, 2017 letter and describe in detail all facts and analysis that went into making those decisions. Include in Your response, what steps You took to implement and remove the firewall,

the dates the firewall went into place and was removed, and how You determined which employees You would or would not firewall.

ANSWER:

     2.    Is Raytheon planning on competing for work under Grimlock or Broadside? If so, please identify whether it plans to compete as a prime or a sub-contractor and all executed non-disclosure agreements or teaming agreements between Raytheon and any third parties (not including Peraton) in relation to Grimlock or Broadside since January 1, 2016.

ANSWER:

     3.    In the past 5 years, has Raytheon ever requested a third party or former employee to be firewalled from a certain contract, program, or area of work? If so, please identify and describe in detail, the date of such request, the content of such request, and to whom such request was made.

ANSWER:

     4.    Identify all persons that You expect to call as witnesses at the preliminary injunction hearing in this matter and state the subject matter and substance on which the witness is expected to testify.

ANSWER:

     5.    Describe in detail all actions, analysis and steps that You took to determine what Peraton confidential, proprietary, or trade secret information You received (including visually and verbally) regarding Grimlock or Broadside. Include in Your response, where You looked for this information, what, if any, search terms You utilized, and what persons or custodians searched or were searched for such information.

ANSWER:

     6.    Describe in detail all Peraton documents, presentations or slides that You have seen, discussed, received, or had access to that were marked as proprietary, confidential, or competition sensitive.

ANSWER:

     7.    Identify all meetings that You attended with Peraton personnel regarding Grimlock or Broadside. For each such meeting, describe what was discussed, whether Peraton presented information or slides during the meeting, who attended such meeting, and whether Raytheon employees took notes.

ANSWER:

     8.    Do You contend that You are entitled to use or disclose information You received from Peraton? If so, what information do you contend you are entitled to use or disclose? Please provide any basis for your contention.

Dated: August 24, 2017

Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 24th day of August, 2017, I hand-delivered a copy of the foregoing to:

Gregg F. LoCascio
Kirkland & Ellis LLP
655 Fifteenth Street, N.W
Washington, D.C. 20005-5793
Telephone: (202) 879-5290
Facsimile: (202) 879-5200
Gregg.locascio@kirkland.com

*Counsel for Defendant Raytheon Company*

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

18658053



8010 TOWERS CRESCENT DRIVE   SUITE 300   TYSONS CORNER, VA 22182
**T** 703.760.1600   **F** 703.821.8949   www.Venable.com

tschapman@venable.com
(703) 905-1409

August 25, 2017

Clerk of the Court
Circuit Court for Fairfax County
4110 Chain Bridge Road
Fairfax, VA 22030

  **Re:**  *Peraton, Inc. v. Raytheon Company*
     **Case No. 2017-11089**

Dear Sir/Madam:

  I am enclosing for filing Plaintiff's Proof of Service on the defendant Raytheon Company in the above matter. Please return a "file stamped" copy of the Proof of Service to the courier for return to our office.

  Thank you for your usual assistance.

        Very truly yours,

        Taylor S. Chapman

TSC/lar
Enclosure
cc:  Gregg F. LoCascio, Esquire
18668157

**VIRGINIA:**

## CIRCUIT COURT FOR FAIRFAX COUNTY

PERATON, INC. (formerly known as Harris IT
Services Corporation),

      Plaintiff,

    v.                        **Case No. 2017-11089**

RAYTHEON COMPANY,

      Defendant.

## PROOF OF SERVICE

    Plaintiff Peraton, Inc. ("Peraton"), by counsel, files this Proof of Service with regards to

Defendant Raytheon Company ("Raytheon") and states as follows:

    1.     On August 10, 2017, Peraton filed the above styled lawsuit.

    2.     The same day, counsel for Peraton sent the then counsel for Raytheon (Gary

Cambell, Esq., campbellg@pepperlaw.com) a copy of the Complaint in this action.

    3.     Later that day, counsel for Raytheon emailed counsel for Peraton and confirmed

that he was authorized to accept service of the Complaint for Raytheon.

    4.     As a result, service was effectuated on August 10, 2017.

Dated: August 25, 2017

Respectfully submitted,

VENABLE LLP

Randall K. Miller (VSB No. 70672)
Nicholas M. DePalma (VSB No. 72886)
Taylor S. Chapman (VSB No. 81968)
Christian R. Schreiber (VSB No. 89544)
8010 Towers Crescent Drive,
Suite 300
Tysons Corner, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
tschapman@venable.com
cschreiber@venable.com

*Counsel for Plaintiff Peraton, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 25th day of August, 2017, a copy of the foregoing was sent via first-class mail, postage prepaid, to the following:

> Gregg F. LoCascio
> Kirkland & Ellis LLP
> 655 Fifteenth Street, N.W
> Washington, D.C. 20005-5793
> Telephone: (202) 879-5290
> Facsimile: (202) 879-5200
> Gregg.locascio@kirkland.com

> *Counsel for Defendant Raytheon Company*

> Randall K. Miller (VSB No. 70672)
> Nicholas M. DePalma (VSB No. 72886)
> Taylor S. Chapman (VSB No. 81968)
> Christian R. Schreiber (VSB No. 89544)
> 8010 Towers Crescent Drive,
> Suite 300
> Tysons Corner, VA 22182
> (703) 905-1449
> (703) 821-8949 (facsimile)
> rkmiller@venable.com
> nmdepalma@venable.com
> tschapman@venable.com
> cschreiber@venable.com

> *Counsel for Plaintiff Peraton, Inc.*

18662864