IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| PERATON, INC. (formerly known as Harris IT Services Corporation), | ) ) ) ) |
| Plaintiff, | ) ) Case No. 1:17cv979-AJT/JFA |
| v. | ) ) |
| RAYTHEON COMPANY, | ) ) |
| Defendant. | ) ) |

**DEFENDANT'S OPPOSITION TO PERATON'S RENEWED MOTION TO COMPEL PRODUCTION OF FOUR PAGES WITHHELD AS PRIVILEGED**

Peraton's renewed motion asking this Court compel production of four pages of documents withheld as privileged should be denied.

*First*, Raytheon's supplemental privilege log clearly describes the nature of the withheld information in accordance with the Rules, and makes clear that the four pages Raytheon redacted in the "SCIF Document" at issue are in fact privileged because they contain legal advice from in-house counsel "analyzing provisions contained in teaming agreements" and "analyzing legal obligations related to teaming agreements." Dkt. No. 710-1. Peraton's suggestion that "Raytheon statements on the privilege log are internally contradictory and raise more questions than they answer" is incorrect. Raytheon's privilege log demonstrates that the withheld information is legal advice from Raytheon in-house counsel on teaming agreements. That concept should come as no surprise to Peraton, whose own (woefully deficient) privilege log contains dozens of entries concerning the same type of subject matters, for example "legal advice of in-house counsel regarding Broadside teaming agreement." Dkt. No. 686-1, Entry 7.

*Second*, the dissemination of the privileged legal advice was limited to twelve employees who were either management or otherwise had a need-to-know on the pursuits and who were invited to the presentation in which the advice was communicated. The presentation itself is marked "Raytheon Most Private" and "Internal Use Only," and Raytheon kept this document and its content confidential.

The Court should deny Peraton's motion.

## ARGUMENT

I.  **RAYTHEON'S SUPPLEMENTAL PRIVILEGE LOG SUFFICIENTLY DESCRIBES THE NATURE OF THE WITHHELD SLIDES AND DEMONSTRATES THAT THE MATERIAL IS PRIVILEGED**

### A. The Log Demonstrates That The Withheld Slides Contain Privileged Information Related Legal Advice About Teaming Agreements

"Provisions contained in teaming agreements" and "legal obligations related to teaming agreements," Dkt. No. 710-1, are quintessential subjects of legal advice for in-house counsel in this line of business. *See* Ex. A, R. Strauss Decl. ¶ 6 ("As in-house counsel for Raytheon, I frequently provide legal advice and guidance to the Raytheon business units regarding contractual interpretation. My day-to-day duties include, among other things, analyzing non-disclosure agreements and teaming agreements."). Peraton's motion to compel proves the point. Peraton attached to its motion a document "involving Robert Strauss involving discussion of teaming agreements, including with the same people (such as Mark Wilson) identified on the Log." Dkt. No. 710 at 4 (citing Ex. 2). That document contained privileged information and was inadvertently produced, and Raytheon immediately clawed the document back in accordance with the Protective Order. After conferring, the parties filed a joint motion to strike the privileged document from Exhibit 2, Dkt. No. 717, which confirmed that "Peraton does not intend to challenge Raytheon's assertion that the document requests legal advice from Raytheon's in-house counsel Bob Strauss

2

regarding a teaming agreement for a different project." *Id*. Far from "support[ing] the conclusion that Strauss discusses teaming agreements predominantly from the business perspective rather than legal perspective" as Peraton would have it, all of this underscores that the withheld slides actually contain privileged legal advice.

      **B.**    **Peraton's Assertion That The Withheld Slides Are Not Privileged Because "This Document Was A Pure Business Document" Is Baseless Speculation**

The supplemental log demonstrates that the withheld slides contain legal advice regarding teaming agreements, *see infra*. That notwithstanding, Peraton insists that the slides are ineligible for protection (1) because Raytheon in-house counsel Bob Strauss (the originator of the legal advice) did not attend the presentation in which the advice was communicated; and (2) because they were included in a presentation that contained other topics. That is not the law.

First, "communications between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal advice." *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.*, 184 F.R.D. 64, 70–71 (D. Md. 1998). "The communications retain their privileged status if the information is relayed from a non-lawyer employee or officer to other employees or officers of the corporation on a need to know basis." *Id.*; 184 F.R.D. 64, 70–71 (D. Md. 1998); *see also McAirlaids, Inc. v. Kimberly-Clark Corp.*, Case No. 7:13-CV-193, 2014 WL 12782814, at *5 (W.D. Va. Sept. 26, 2014) ("I am cognizant of the need for large corporations like K-C to transmit privileged documents between non-attorneys so that its employees may be properly informed of legal advice and act appropriately."); *Deel v. Bank of Am., N.A.*, 227 F.R.D. 456, 460 (W.D. Va. 2005) ("A corporation does not waive its privilege when non-lawyer employees send or receive communications because corporate communications which are shared with those having need to know of the communications are confidential for purposes of the attorney-client privilege."). The fact that Mr. Strauss provided legal advice to Mr. Wilson (a

3

member of Raytheon's contracts department) who then relayed the advice to Raytheon's Transformers decision makers does not vitiate the privilege. *See* Ex. A, R. Strauss Decl. ¶ 7 ("Prior to February 1, 2017, I was approached by Mark Wilson, Senior Contracts Manager, for legal advice regarding Raytheon's legal rights and obligations under the Broadside teaming agreement. Our business units frequently rely on me and other in-house legal department lawyers to provide advice regarding such legal requirements."); *see also* Dkt. No 686-1, Entry 192 (describing "confidential document concerning legal advice relayed by contracts department regarding language of Teaming Agreement").

Second, Peraton points without any support to the "Agenda" at the beginning of the presentation as supporting its "conclusion that this document was a pure business document." Dkt. No. 710 at 5. That Agenda, however, confirms that the topic of "Teaming Agreement, OCI Discussion" was the very first thing discussed at the meeting (the 0800-0830), followed by the "Broadside Overview" beginning at 0830:

| Time | Item | Notes |
|---|---|---|
| 0800 | Teaming Agreement, OCI Discussion | |
| 0830 | Broadside Overview | |
| 0900 | Review Competitor Strengths / Weaknesses | Spreadsheet Columns D, E, F |
| 1000 | Break | |

That 0800 topic was the discussion of legal advice from Bob Strauss. Far from "rais[ing] more questions than they answer," the agenda items correlate with the nature of the withheld slides as set forth in the privilege log. *See* Dkt. No. 676-1 (redacting four slides, followed by unredacted slide "Broadside Overview"). Moreover, Peraton's suggestion that the discussion of "teaming agreements" indicates that the discussion was limited to "business topics," Dkt. No. 710 at 5, is belied by Peraton's own privilege log, which confirms that in-house counsel (not surprisingly)

provide legal advice on "teaming agreements." *See* Dkt. No. 686-1 (Peraton privilege log withholding or redacting 130 documents based on legal advice regarding teaming agreements); *see, e.g.*, Entry 95 (describing "Confidential document relaying legal advice provided by attorney regarding teaming agreement"); Entry 183 (describing "Confidential document concerning legal advice regarding Broadside teaming agreement").

## II.   RAYTHEON HAS NOT WAIVED ITS PRIVILEGE BY FAILING TO CONTROL THE DISSEMINATION OF THE LEGAL ADVICE

First, Peraton's intimation that Raytheon is playing a "shell game" or engaging in "an exercise of misdirection" with respect to the recipients of the presentation is without merit. Tellingly, Peraton omits that prior to the filing of it motion, in response to a question from Mr. Miller suggesting that he could not "really tell from the log who exactly had access to the document. Did the 12 invitees receive it—or is there some different group," counsel for Raytheon clarified that:

> That description was meant to be a more accurate substitute for the "to" column, since this was a presentation rather than an email or letter. The slide deck was made for the briefing described in the right hand column and the people listed were invited to meeting. From our conversation on the phone the other day, I understood you plan on moving to compel in camera review based on the argument that the number of people on that list is too large. As the log reflects, all these people were Raytheon employees and they had involvement in decision making and receiving legal advice related to the issues, which from our legal research is what matters.

Ex. B, March 16, 2018 Email from S. McEldowney to R. Miller.

Second, Raytheon's privilege log identified those Raytheon employees who were invited to the meeting where the legal advice was communicated in the presentation. The presentation was not available to Raytheon employees generally. The presentation was not provided to third parties and third parties were not invited to and did not attend the presentation. The presentation was and is highly confidential and designated "Raytheon Most Private" and "Internal Use Only"

5

document. Raytheon has verified that no third parties viewed this presentation and that only decision-makers and supporting employees viewed the presentation.

Third, Peraton's suggestion that the privilege is waived because the document was shared with the Raytheon employees listed on the privilege log is baseless. The supplemental privilege log explains that the individuals are "management level employees and those on a need-to-know basis (by reason of their involvement in decision making related to Transformers) had access to [the document]." Dkt. No. 710-1. As courts in this Circuit and elsewhere have recognized, "the company's burden 'is to show that it limited its dissemination of the documents in keeping with their asserted confidentiality, *not to justify each determination that a particular employee should have access to the information therein*.'" *In re New York Renu with Moistureloc Prod. Liab. Litig.*, No. CA 2:06-MN-77777-DCN, 2008 WL 2338552, at *1 (D.S.C. May 8, 2008) (emphasis added). "[W]hen a corporation provides a confidential document to certain specified employees or contractors with the admonition not to disseminate further its contents and the contents of the documents are related generally to the employees' corporate duties, absent evidence to the contrary we may reasonably infer that the information was deemed necessary for the employees' or contractors' work." *F.T.C. v. GlaxoSmithKline*, 294 F.3d 141, 147–48 (D.C. Cir. 2002).

## CONCLUSION

For these reasons, the Court should deny Peraton's Renewed Motion to Compel.

Dated:  March 21, 2018         Respectfully submitted,

                 By: */s/ Gregg F. LoCascio, P.C.*
                     Gregg F. LoCascio, P.C. (VSB # 38908)
                     Sean M. McEldowney (*pro hac vice*)
                     Patrick Haney (*pro hac vice*)
                     Elizabeth Dalmut (*pro hac vice*)
                     Patrick Brown (*pro hac vice*)
                     Brandon Stone (*pro hac vice*)
                     Kirkland & Ellis LLP
                     655 15th Street, N.W.
                     Washington, D.C. 20005
                     Telephone: (202) 879-5000
                     Facsimile: (202) 879-5200
                     gregg.locascio@kirkland.com

                     Craig C. Reilly (VSB # 20942)
                     111 Oronoco Street
                     Alexandria, Virginia 22314
                     T: (703) 549-5354
                     F: (703) 549-5355
                     E: craig.reilly@ccreillylaw.com

                     Attorneys for Defendant Raytheon Company

**CERTIFICATE OF SERVICE**

I hereby certify that on March 21, 2018, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will automatically provide notice to the following:

Randall K. Miller
Nicholas M. DePalma
Kevin W. Weigand
Christian R. Schrieber
Ashleigh J. F. Lynn
8010 Towers Crescent Drive, Suite 300
Tysons, VA 22182
(703) 905-1449
(703) 821-8949 (facsimile)
rkmiller@venable.com
nmdepalma@venable.com
kwweigand@venable.com
crschreiber@venable.com
ajlynn@venable.com

       */s/ Gregg F. LoCascio, P.C.*
Gregg F. LoCascio, P.C. (VSB # 38908)
Kirkland & Ellis LLP
655 15th Street, N.W.
Washington, D.C. 20005
Telephone: (202) 879-5000
Facsimile: (202) 879-5200
gregg.locascio@kirkland.com

Attorney for Defendant Raytheon Company